Steven D. PEDERSON, Mary I. Pederson, Wendell T.
Pederson, and Josephine C. Pederson, Plaintiffs-
Respondents,

v.

TOWN BOARD OF the TOWN OF WINDSOR, and Town of
Windsor, Defendants-Appellants.

Court of Appeals

*No. 93–3180. Oral argument November 3, 1994.—Decided
February 16, 1995.*

(Also reported in 530 N.W.2d 427.)

663

For the defendants-appellants the cause was submitted on the briefs of *Gordon Brewster Baldwin* and *Lawrence E. Bechler* of *Murphy & Desmond, S.C.* of Madison and *Richard A. Lehmann* of *Boardman, Suhr, Curry & Field* of Madison and orally argued by *Gordon Brewster Baldwin* and *Lawrence E. Bechler*.

For the plaintiffs-respondents the cause was submitted on the brief of *Michael J. Lawton* of *Lathrop & Clark* of Madison and orally argued by *Michael J. Lawton*.

Before Dykman, Sundby, and Vergeront, JJ.

DYKMAN, J.   The Town Board of the Town of Windsor and the Town of Windsor appeal from orders of the trial court striking conditions from Windsor's

approval of a preliminary plat of a subdivision owned by Steven D., Mary I., Wendell T. and Josephine C. Pederson. The conditions at issue require the Pedersons to complete a facilities plan for a comprehensive sanitary sewer collection system for the drainage basin in which the plat is located, make a security payment for the full estimated cost of the sewer system, and obtain approval of the means for furnishing potable water for home consumption and fire protection purposes. Windsor contends that it has the authority to impose these conditions as prerequisites to its approval of the preliminary plat, and that these conditions are reasonable.

We conclude that Windsor has the authority to require the Pedersons to complete a facilities plan of a sanitary sewer system as to that part of the drainage basin lying within the town's borders so long as it is found to be reasonable. Consequently, we reverse the trial court's order striking condition six in its entirety and remand the case for an evidentiary hearing as to whether it is reasonable to require the Pedersons to complete a facilities plan of that part of the drainage basin located within Windsor. We also conclude that while Windsor has the authority to require the Pedersons to advance the costs for public improvements, requiring the Pedersons to make a security payment for the full estimated cost of a sewer system covering an entire drainage basin is patently unreasonable. Thus, we affirm the trial court's order striking condition seven. Finally, we conclude that Windsor does not have the authority to require the Pedersons to obtain approval of the means for furnishing potable water for the subdivision. Consequently, we affirm the trial court's order striking condition eleven.

## BACKGROUND

In July 1991, the Pedersons submitted a preliminary plat of a subdivision to the Town Board of Windsor. Windsor initially rejected the plat in August 1991. Upon certiorari review, the trial court concluded that Windsor's rejection of the Pedersons' preliminary plat was unlawful and ordered Windsor to condition approval of the plat upon the Pedersons' providing a public or private sewage system.

In July 1992, Windsor adopted the following resolution:

> The preliminary plat . . . is hereby conditionally approved, subject to the owner's full satisfactory completion, as determined by the Town Board, of all of the following conditions, which shall be determined by Town Board resolution accepting all items listed below:
>
> . . . .
>
> (6) Pursuant to Wis. Stats. Section 236.13(2)(a), a facilities plan for a comprehensive sanitary sewer collection system for the drainage basin in which the proposed plat is located. This plan shall include sewer locations, sizes, lift stations, if any, construction timetable, locations of lateral connections to proposed home sites on all lots within the plat including an engineer's cost estimate. A draft of this report shall be submitted to the Town Business Manager, who shall request comment as to technical sufficiency from the Town Engineer, Madison Metropolitan Sewerage District (MMSD) staff, and other appropriate governmental agencies. The final proposed plan as approved by the Town Engineer, MMSD staff and other appropriate governmental agencies, must be approved by the Town Board as a condition of this preliminary plat approval.

(7) As prescribed by Section 6.2, payment of security for the full estimated cost, as determined by the Town Engineer, of the said basin collection system and other required improvements in a form deemed acceptable by the Town Attorney. As other lands are subdivided within the basin, the owner shall be entitled to refund of a prorated share of such security.

. . . .

(11) Approval of the means for furnishing potable water for home consumption and fire protection purposes pursuant to Section 6.8 of the Land Division and Subdivision Ordinance.

Town of Windsor, Wis., Resolution No. 92-14 (July 16, 1992). The Pedersons appealed the decision by statutory certiorari pursuant to § 236.13(5), STATS., asserting that Windsor lacked the authority to impose these conditions and acted unreasonably when it did. The trial court struck conditions six, seven, and eleven and all other conditions directly relating to them. Windsor appeals.

## STANDARD OF REVIEW

■

We review the decision of the Town Board, and not that of the trial court. *Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison Plan Comm'n*, 178 Wis. 2d 74, 84, 503 N.W.2d 265, 267 (Ct. App. 1993).

Any person aggrieved by an objection to a plat or a failure to approve a plat may appeal therefrom as provided in s. 62.23(7)(e)10, 14 and 15[1] . . . . The

---

[1] The trial court may take additional evidence as is necessary for the disposal of the matter being reviewed and it may also reverse or affirm, wholly or partly, or may modify the decision brought up for review. Section 62.23(7)(e)10, STATS.

court shall direct that the plat be approved if it finds that the action of the approving authority or objecting agency is arbitrary, unreasonable or discriminatory.

Section 236.13(5), STATS. Whether Windsor exceeded its authority when it required public improvements as conditions of approval is a question of law we review *de novo. Gordie Boucher*, 178 Wis. 2d at 84, 503 N.W.2d at 268.[2] If it did, it acted arbitrarily.

## PRELIMINARY PLAT APPROVAL

Windsor argues that it has the authority to require the Pedersons to complete a facilities plan for a sewer system, advance a security payment for the sewer system, and furnish potable water as prerequisites to

---

[2] Windsor argues that our review should be deferential. Were we reviewing a challenge to a particular subdivision ordinance, we would do so deferentially. "Sec[tion] 236.45(2)(b), [STATS.,] directs that any ordinance adopted by a municipality shall be liberally construed in favor of the municipality." *Town of Sun Prairie v. Storms*, 110 Wis. 2d 58, 64, 327 N.W.2d 642, 644-45 (1983) (quoting *City of Mequon v. Lake Estates Co.*, 52 Wis. 2d 765, 774, 190 N.W.2d 912, 916 (1971)). However, the Pedersons are not challenging any subdivision ordinance, but instead argue that the conditions imposed upon them pursuant to Windsor's subdivision ordinances are beyond Windsor's authority and are unreasonable. While we are mindful of the broad discretion given to local authorities to control the development of subdivisions, and great latitude is afforded to municipalities with respect to fixing conditions for plat approval, *Brookhill Dev., Ltd. v. City of Waukesha*, 103 Wis. 2d 27, 35-36, 307 N.W.2d 242, 246 (1981), whether the municipality has exceeded its authority and imposed unreasonable conditions are questions of law which we review with no deference to Windsor's decisions. *Gordie Boucher*, 178 Wis. 2d at 84, 503 N.W.2d at 268.

approving their preliminary plat. According to Windsor, authority to conditionally approve plats is derived from its subdivision ordinances pursuant to § 236.13(1)(b), STATS., as well as from a specific grant of authority under § 236.13(2)(a). Windsor also contends the conditions were reasonably imposed upon the Pedersons. Consequently, it argues, the trial court erred when it struck these conditions.

Section 236.13, STATS., prescribes the basis for plat approval:

(1) *Approval of the preliminary or final plat shall be conditioned upon compliance with*:
(a) The provisions of this chapter;
(b) *Any municipal, town or county ordinance.*
(c) Any local master plan which is consistent with any plan adopted under s. 236.46 or official map adopted under s. 62.23;

. . . .

(2)(a) *As a further condition of approval, the governing body of the town or municipality within which the subdivision lies may require that the subdivider make and install any public improvements reasonably necessary or that the subdivider execute a surety bond or provide other security to ensure that he or she will make those improvements within a reasonable time.*

(3) No approving authority or agency having the power to approve or object to plats shall condition approval upon compliance with, or base an objection upon, any requirement other than those specified in this section.

(Emphasis added.)

Chapter 236, STATS., grants local governments "considerable authority to direct and control land development within their jurisdiction." *Town of Sun Prairie v. Storms*, 110 Wis. 2d 58, 64-65, 327 N.W.2d

670

642, 645 (1983). The legislature intended to place control over the decision of public improvements with the governmental unit most accountable for such decisions where such an ordinance exists. *Rice v. City of Oshkosh*, 148 Wis. 2d 78, 91, 435 N.W.2d 252, 257 (1989).

Windsor has adopted several ordinances governing the subdivision of land pursuant to § 236.45(2)(a), STATS.[3] The purpose of § 236.45 is to permit municipalities to respond to the pressures of development by regulating the formation of subdivisions. *Jordan v. Village of Menomonee Falls*, 28 Wis. 2d 608, 613, 137 N.W.2d 442, 445 (1965).

In 1978, Windsor adopted an ordinance regarding sewage systems and water supply facilities. The ordinance provided in pertinent part:

8.7   *Sanitary Sewage Disposal Systems*

The subdivider shall make adequate sewage disposal systems available to each lot within the subdivision *or land division.*

*Subdivisions* shall be served by public sewer facilities. The size, type, and installation of all sanitary sewers proposed to be constructed shall be in accordance with plans and specifications approved by the Town Board.

*Land Divisions* may be served by private sewage disposal systems, if public sewer facilities are not available.

. . . .

8.9   *Water Supply Facilities*

---

[3] Section 236.45(2)(a), STATS., provides in part, "[A]ny municipality, town or county which has established a planning agency may adopt ordinances governing the subdivision or other division of land which are more restrictive than the provisions of this chapter."

The subdivider shall make adequate domestic water supplies available to each lot within the subdivision *or land division.*

*Where public water service is available,* the subdivider shall construct water mains in such a manner as to make adequate water service available to each lot within the subdivision *or land division.* The size, type, and installation of all public water mains proposed to be constructed shall be in accordance with plans and specifications approved by the Town Board.

*If public water service is not available,* the subdivider shall make provision for adequate private water systems as specified by the Town Board and by the Wisconsin State and Dane County Boards of Health. No more than two (2) dwelling units may be served off of a single well, unless specifically allowed by the Town Board.

*If at the time of final platting, public water service is not available, but will become available* within a period of five (5) years from the date of recording of the plat, the Town Board may require the subdivider to install or cause to be installed water laterals to the street lot line.

Town of Windsor, Wis., Subdivision Ordinance §§ 8.7, 8.9 (March 27, 1978).

In September 1979, Windsor adopted a Land Use Plan creating an unsewered subdivision district which included existing unsewered subdivisions, and a sewered development district, called an urban service area, which included land where public sanitary sewer service is available or planned and where all development must be served by public sewer. The Pedersons' proposed plat is located outside of the urban service area.

672

In 1987, Windsor adopted an additional subdivision ordinance. The 1987 amendments provide in pertinent part:

SEC. 6.7   SANITARY SEWERAGE SYSTEM

(a)  There shall be provided a sanitary sewerage system in conformity with the master plan of sewers as approved by the Town Board and/or sanitary district.

(b)  *The subdivider shall make adequate sewage disposal systems available to each lot within the subdivision,* certified survey parcel or land division.

(c)  *Subdivisions and certified survey parcels in the Urban Service Area shall be served by public sewer facilities.* The size, type, and installation of all sanitary sewers proposed to be constructed shall be in accordance with plans and specifications approved by the appropriate sanitary district.

(d)  *Land divisions created by certified survey outside the Urban Service Area may be served by private sewage disposal systems, if public sewer facilities are not available. . . .*

(e)  *The subdivider shall pay all the costs of all sanitary sewer work including the bringing of the sanitary sewer from where it exists to the subdivision* in question as well as providing all sanitary sewer work within the subdivision. The size, type and installation of all sanitary sewers proposed to be constructed shall be in accordance with plans and standard specifications approved by the appropriate sanitary district serving the area.

673

SEC. 6.8 WATER SUPPLY FACILITIES (URBAN SERVICE AREAS)

(a) *The subdivider shall make adequate domestic water supplies available, and pay for such improvements, for each lot within the subdivision or land division in the Urban Service Area.*

(b) The subdivider shall construct water mains in such a manner as to make adequate water service available to each lot within the subdivision or land division. The size, type, and installation of all public water mains proposed to be constructed shall be in accordance with plans and specifications approved by the appropriate sanitary district. Water service laterals shall be provided to all lots.

Town of Windsor, Wis., Land Division and Subdivision Ordinance §§ 6.7-6.8 (November 10, 1987) (emphasis added). Section 6.7 regarding sewerage systems applies to all subdivisions while § 6.8 regarding water supply facilities applies only to subdivisions within the urban service area. Neither the 1978 nor the 1987 ordinance indicates whether public water services are required in subdivisions outside of the urban service area.

Windsor relied upon § 236.13(2)(a), STATS., and subdivision ordinance §§ 6.2, 6.7 and 6.8 when it imposed conditions on its approval of the Pedersons' preliminary plat. Condition six requires the Pedersons to complete a facilities plan for a sewer system for the entire drainage basin in which the plat is located. The parties are in dispute as to whether condition six refers to the Token Creek Basin specifically. Maps submitted by Windsor with its return clearly show that only two drainage basins flow through Windsor, the Token Creek Basin and the Yahara River Basin, both of which

join in the Town of Burke, to the south of the Town of Windsor. Thus, either basin extends beyond Windsor's boundaries.

A municipality may adopt subdivision ordinances imposing off-site public improvements as conditions of plat approval, providing the plat lies within a municipality's limits. *See Rice*, 148 Wis. 2d at 89, 435 N.W.2d at 256. But municipalities have no authority to impose conditions upon a subdivider extending beyond its borders and may only exercise approval authority with respect to that part of a plat lying within its boundaries or its extraterritorial plat approval jurisdiction. *Brookhill*, 103 Wis. 2d at 36-37, 307 N.W.2d at 246-47.

We conclude that Windsor exceeded its authority when it required the Pedersons to complete a facilities plan of part of the drainage basin extending beyond its territorial boundaries. However, we need not strike the entire condition but may retain that part which Windsor has the authority to impose providing it is reasonable. *Id.* Consequently, we strike only that part of condition six requiring the Pedersons to provide a facilities plan of that part of the drainage basin lying outside of Windsor's borders. As to the remainder of the basin located within Windsor, we conclude Windsor has the authority pursuant to subdivision ordinance § 6.7 and § 236.13(2)(a), STATS., to require the Pedersons to complete a public sewerage facilities plan providing it is reasonable. Since the trial court may take additional evidence as is necessary for the disposal of the matter being reviewed, § 62.23(7)(e)10, STATS., we remand the case to the trial court to hold an

evidentiary hearing as to whether requiring the Pedersons to do so is reasonable.[4]

Condition seven requires the Pedersons to advance the costs of the sewer system. The condition requires a full security payment for providing a sewer system for the entire drainage basin. Maps provided show either drainage basin in the Town of Windsor to be substantial in size. Posting security to sewer the entire basin would entail a vast expense. Windsor has not offered any other narrower interpretation. Subdivision ordinance § 6.7(e) grants Windsor the authority to make subdividers pay all the costs of all sanitary sewer work including bringing the sanitary sewer from where it exists to the subdivision. However, the breadth of condition seven exceeds the cost contemplated by § 6.7(e). We conclude that this condition is patently unreasonable and affirm the trial court's order striking it.

Windsor's eleventh condition requires the Pedersons to furnish potable water for home consumption and fire protection pursuant to subdivision ordinance § 6.8. That ordinance requires subdividers to make adequate domestic water supplies available for subdivisions within the urban service area. The ordinance, by its terms, is inapplicable to the Pedersons. Though incorporating an inapplicable ordinance as a condition for plat approval would be appropriate for purposes of adequately notifying the Pedersons of Windsor's

[4] Windsor argues that the Pedersons are to blame for the lack of evidence with regard to the reasonableness of its conditions because they did not prepare a sewerage facilities plan. However, the Pedersons moved the trial court for an evidentiary hearing to address this exact issue. That the trial court decided to strike the conditions without first holding an evidentiary hearing is not the fault of the Pedersons.

requirement, notice is not the problem with condition eleven. The Pedersons complain that without an ordinance regulating water supplies outside the urban service area, Windsor may not impose condition eleven.

Windsor replies that public improvement requirements arise under § 236.13(2)(a), STATS., without any separate subdivision ordinance requirement. We would be inclined to agree but for the judicial gloss on that statute.

In *State ex rel. Columbia Corp. v. Town Board*, 92 Wis. 2d 767, 779, 286 N.W.2d 130, 136 (Ct. App. 1979), we concluded that local units of government have no discretion to reject proposed plats under § 236.13(1), STATS., unless the plat conflicts with an existing statutory requirement of ch. 236 or with an existing written ordinance, master plan, official map, or rule. In short, a town board may not *reject* a plat for reasons known only to the town board. We did not consider the statutory requirements for a town to conditionally approve a plat.

Though *Columbia Corp.* was decided pursuant to § 236.13(1), STATS., and involved a town's rejection of a plat, the supreme court applied the reasoning of *Columbia Corp.* to the conditional approval of a plat under § 236.13(2)(a). *Rice*, 148 Wis. 2d at 89-91, 435 N.W.2d at 257. Our reasoning in *Columbia Corp.*, that a § 236.13(1)(b) town ordinance was required if a town wished to impose specific plat conditions, was therefore added to § 236.13(2)(a), though the latter statute makes no such requirement.

We do not believe that the language of § 236.13(2)(a), STATS., requires a town board to adopt an ordinance before the board requires a subdivider to make public improvements that are reasonably necessary. But *Rice* is specific. Not only did the supreme

court find "unpersuasive" an argument based on an assumption that § 236.13(2)(a) was a grant of power enabling a town to establish public improvement requirements without enacting an ordinance, but the supreme court said: "We conclude the problems associated with the need to codify requirements as pursuant to sec. 236.13(1), Stats., are also present in cases arising under sec. 236.13(2)(a)." *Rice,* 148 Wis. 2d at 90-91, 435 N.W.2d at 257.

We are bound by previous decisions of the supreme court. *State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984). We therefore must conclude that if Windsor wishes to require subdividers to provide means of furnishing potable water for home consumption and fire protection in plats outside of the Urban Service Area, it must do so by ordinance. Accordingly, we affirm the trial court's order striking this condition.

Finally, Windsor argues that the Pedersons failed to exhaust administrative remedies before beginning this action. It asserts that the Pedersons made no effort to fulfill any condition required by Windsor, and instead, sued. In particular, it argues that the Pedersons' refusal to even attempt to create an Urban Service Area resulted in a paucity of record for judicial review. But we find no authority holding that a real estate subdivider must petition for inclusion in an Urban Service Area before commencing suit to declare invalid a conditional approval of a plat. The cases cited by Windsor for this proposition, *Kaiser v. City of Mauston,* 99 Wis. 2d 345, 299 N.W.2d 259 (Ct. App. 1980), *overruled on other grounds by DNR v. City of Waukesha,* 184 Wis. 2d 178, 515 N.W.2d 888 (1994), and *Nodell Inv. Corp. v. City of Glendale,* 78 Wis. 2d 416,

254 N.W.2d 310 (1977), both note that courts usually apply exhaustion requirements where recourse to an administrative agency is available rapidly and will protect the party's claim of right.

Inclusion in an Urban Service Area is no open-and-shut matter. The elements necessarily included in an application for an Urban Service Area are complicated. *See* WIS. ADM. CODE § NR 121.05. It would be difficult or impossible for the Pedersons to include the preliminary plat in an Urban Service Area in the thirty days following town board action, after which a challenge to the town's requirements would be barred. Section 236.13(5), STATS. The Pedersons claim the right to plat approval, not the right to be included in an Urban Service Area.

Each exhaustion case must be considered on its facts. We conclude that exhaustion of administrative remedies, in the form suggested by Windsor, is inapplicable to certiorari actions seeking review of a town's conditional approval of a preliminary plat.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.